IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUCK DRIVERS, HELPERS, TAXICAB DRIVERS, GARAGE EMPLOYEES AND AIRPORT EMPLOYEES LOCAL UNION NO. 355 | * * * | |
| Plaintiff | * | |
| v. | * | CIVIL No. JKB-13-0043 |
| THE BALTIMORE SUN COMPANY, LLC | * * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

The Truck Drivers, Helpers, Garage Employees and Airport Employees Local Union No. 355 ("Plaintiff") brought this suit against the Baltimore Sun Company, LLC ("Defendant") to enforce an arbitration award pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Now pending before the Court are (1) Defendant's motion to dismiss or, alternatively, for summary judgment (ECF No.8) and (2) Plaintiff's cross-motion for summary judgment (ECF No. 11). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below Plaintiff's cross-motion is GRANTED in part and DENIED in part and Defendant's motion is DENIED. The back-pay calculation is REMANDED to the original arbitrator.

I.     BACKGROUND

This action stems from Defendant's decision to discharge Donald C. Liggins ("Mr. Liggins") from its employment following an accident on July 29, 2009. (ECF No. 8-1 at 4). Mr.

Liggins worked as a truck driver for Defendant until it terminated his employment on November 19, 2009 "as a result of gross negligence of duty," alleging that he had caused a "severe accident on July 29, 2009 which resulted in physical injuries to several people and significant property damage." (ECF No. 11-11). The same day, Mr. Liggins filed a grievance concerning his termination (ECF No. 11-10) in accordance with the procedures of the collective bargaining agreement ("CBA") executed by Plaintiff and Defendant. (ECF No. 1 ¶ 7).

The parties agreed to submit the matter to Arbitrator James M. Harkless ("Arbitrator Harkless"). (ECF No. 11-1). Arbitrator Harkless held four hearings between June 2010 and February 2011 to determine "whether the Grievant's [, i.e. Mr. Liggins's,] discharge was for just cause and, if not, what should be the remedy." (ECF No. 1-2 at 1-2). During these hearings, Defendant introduced evidence that Mr. Liggins had received workers' compensation payments. (ECF No. 15, Ex. 3 at 269-71). Defendant further introduced evidence regarding payments it made as a result of Mr. Liggins's accident. (*Id.* at 273-74). In addition, Defendant questioned Mr. Liggins about his efforts to find a job after his termination. (*Id.* at 548-553).

On February 7, 2011, in anticipation of the fourth and final hearing, Defendant obtained a subpoena from Arbitrator Harkless to compel Mr. Liggins to produce documents related to his income and job search since November 2009. (ECF No. 8, Ex. 6). Subsequently, Plaintiff moved to quash the subpoena on the basis that it was "overbroad and premature." (ECF No. 8, Ex. 7 at 1). Plaintiff argued that "[a]ll of the material requested in the subpoena concerns mitigation of damages, and it is unnecessary to go into that issue so laboriously at this point." (*Id.*) "Issues of the amount of interim earnings," Plaintiff continued, "and the efforts made to search for employment are normally dealt with, if they need to be, after the outline of the remedy has been decided . . . . In the event disputes arise [between the parties in computing back pay], the

arbitrator can be asked to lend his assistance in resolving them at that time." (*Id.* at 2). The motion to quash the subpoena was then either granted or withdrawn. (ECF No. 11, Ex. A ¶ 9).

In its post-hearing brief to Arbitrator Harkless, Plaintiff argued that Mr. Liggins "should not have been discharged from his employment for this accident . . . . [U]nder the contract provisions he should be fully reinstated to his position and compensated at his usual rate of pay for lost work opportunity." (ECF No. 15, Ex. 5 at 42). With regard to back pay, Plaintiff explained that "Liggins received workers' compensation for the period from the accident until October 18, 2009 . . . . His backpay should begin on that date and run through the date of his reinstatement to employment." (*Id.*) Plaintiff further specified that "Donald Liggins has been receiving unemployment compensation since he was able to return to work. If he is made whole for his lost wages, that compensation might be offset from his backpay. But if it is, it must be understood that the offset is only allowed to the extent that Liggins obtained and is able to keep the unemployment compensation." (*Id.* at 43). Finally, Plaintiff requested that "the Arbitrator retain jurisdiction over the remedy for a period of ninety (90) days, in order to resolve any disagreements about the remedy." (*Id.* at 44).

For its part, Defendant argued that "[i]n short, an employee who engaged in gross neglect of duty, who has failed to show any remorse or apologize for the damage and injuries he caused to the Publisher's property, to himself and to 3 state employees should not be rewarded with continued employment, nor should this Arbitrator risk the safety of the traveling public by reinstating Grievant to a job, the essence of which he abrogated when he alone caused a horrific crash on July 29, 2009." (ECF No.8, Ex. 9 at 29). In support of its claim, Defendant cited, among several others, the "Discharge and Suspension" clause of the CBA, which provides, in relevant part, that:

> 8. The Publisher reserves the right to discharge or suspend any employee covered by this Agreement for just cause in accordance with the following:
>
> . . .
>
> 2. In respect to the discharge, the Publisher must give at least one (1) warning notice* of the specific complaint against such employee in writing, and a copy of the same to the Union and the Shop Steward. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from the date of the occurrence upon which the complaint and warning are based.
>
> . . .
>
> *No warning shall be required in case of gross neglect of duty or willful misconduct.

(*Id.* at 3). The Defendant also cited the "Rules and Regulations" clause of the CBA, which provides, in relevant part, that:

> 13(a). All employees shall exercise reasonable care in the protection of the Publisher's property and equipment but shall not be held responsible for accidents, damage or other loss unless such accident, damage or other loss shall have been proven to have been caused by such employee's negligence.

(*Id.*). Defendant argued that "Grievant's termination was the result of his reckless behavior that resulted in his clear disregard for life and property." (*Id.* at 24). Further, Defendant provided a preliminary accounting of its costs as a result of Mr. Liggins's accident, which it claimed totaled "$86,220.16 and expenses remain ongoing." (*Id.* at 20).

On March 20, 2012, Arbitrator Harkless rendered his decision:

> While the Grievant[, i.e. Mr. Liggins,] was negligent in operating his truck on July 29, 2009, his inattention to the roadway did not rise to the level of "gross neglect of duty" within the meaning of Section 8 of the parties Agreement, [the CBA,] as charged. Therefore, the Grievant's discharge for that reason was not for just cause. Within 14 days after receipt of this Award, the Employer[, i.e. Defendant,] shall reinstate him to his Truck Driver position, with reimbursement for all wages lost from October 19, 2009 to the date of reinstatement. This shall be without loss of seniority or other benefits.
> Should the Grievant be required to reimburse the State of Maryland for any unemployment payments he received, the Employer shall make that reimbursement to the State on his behalf. In line with the Employer's Disciplinary Policy for its transportation personnel, the Employer should issue to the Grievant

a written warning letter for this preventable accident to be effective from the date of his reinstatement.

(ECF No. 1-2 at 25-26).

Following this order, Defendant sent Plaintiff a letter stating that "in accordance with Section 13(a) of the collective bargaining agreement, the Publisher intends to recover all financial loss incurred as a result of Mr. Liggins' negligence." (ECF No. 8 Ex. 12). Defendant also sent a letter to Mr. Liggins stating that:

> [O]n March 28, 2012, Arbitrator James Harkless found you to have been negligent in the operation of a company truck on July 29, 2009 causing an accident in which several individuals, including yourself, were injured, and resulting in significant property damage.
> . . .
> Under the terms of Section 13(a) of the collective bargaining agreement . . . the Publisher is holding you responsible for the financial loss incurred by your negligence. As of today, that amount is $107,470.06 . . . .
> . . .
> Calculation of the amount of back pay pursuant to Arbitrator Harless' award has not been completed . . . . Please be advised that the Publisher will deduct the back pay ultimately determined to be owed to you from the financial loss we are entitled to recover pursuant to the terms of the collective bargaining agreement . . . .

(ECF No. 8, Ex. 13). Further, in an e-mail to Plaintiff's counsel, Defendant's counsel explained that "the Sun will also take into consideration the grossly inordinate delay caused by Mr. Harkless' late decision on any back pay obligation . . . . We do not believe that under any reasonable interpretation of 'back pay' the Sun should be responsible for a year of back pay when Mr. Harkless was so dilatory in getting out his decision." (ECF No. 8, Ex. 14).

On July 23, 2012, Plaintiff's counsel wrote to Arbitrator Harkless to ask that he "issue a clarification" of his ruling specifying that he "did not intend Mr. Liggins to bear the costs of the accident." (ECF No. 8, Ex. 14 at 2). Defendant's counsel objected to this request to clarify on the basis that Aribtrator Harkless was *functus officio* after he issued his decision and that therefore

5

he was without jurisdiction to amend or clarify the decision. (ECF No. 8, Ex. 20 at 1). Defendant further made clear that it did not consent to Arbitrator Harkless's exercise of "remedial jurisdiction." (*Id.* at 3).

On August 30, 2012, Arbitrator Harkless ruled that he did not have jurisdiction to clarify the award in his decision:

> As the Employer notes, part 6.E.1 [of the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes] permits an arbitrator "to retain remedial jurisdiction in the award or to resolve any questions that may arise over application or interpretation of a remedy." However, the Arbitrator did not do so in this situation, even though the Union made such a request in its post-hearing brief. The matter which Union counsel requests the Arbitrator to qualify does not fall within those which he may correct, under NAA [National Academy of Arbitrators] Opinion No. 20. Consequently, in the absence of consent from the Employer for the Arbitrator to address it, he must decline to do so.

(ECF No. 8, Ex. 21).

On January 4, 2013, Plaintiff filed its complaint seeking enforcement of Arbitrator Harkless's award by with regard to Mr. Liggins's lost wages. (ECF No. 1). On May 21, Defendant filed a motion to dismiss or, in the alternative, for summary judgment ordering the parties to arbitrate all remaining disputes before a newly selected arbitrator. (ECF No. 8). On July 2, Plaintiff filed a cross-motion for summary judgment. (ECF No. 11).

## II. LEGAL STANDARD

### a. Motion to Dismiss

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

### b. Motion for Summary Judgment

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III.   ANALYSIS

At issue in this case is the calculation of Mr. Liggins's back pay. Neither party contests Arbitrator Harkless's order that Mr. Liggins be reinstated with full back pay. Rather, Defendant contends that two issues remain outstanding: "(i) [w]hether the Grievant mitigated, or made

genuine efforts to mitigate, his damages between the date of his termination in November 2009 and the date on which he was reinstated (April 2, 2012); and (ii) [h]ow much of Grievant's back pay, if any, is offset by The Sun's costs and damages incurred because of Grievant's negligence." (ECF No. 8-1 at 3). Defendant contends that these constitute a "new issue to be resolved" and not a "clarification of the award" and that therefore the "proper forum to determine the parties' current outstanding dispute is before a new arbitrator mutually selected by the parties." (ECF Nos. 14-1 at 8; 8-1 at 3).

For its part, Plaintiff acknowledges that Arbitrator Harkless's award fails to specify an exact figure for the amount of back pay owed but argues that the record contains all the necessary facts for this Court to determine the specific remedy. (ECF No. 11-1 at 37-38). Further, Plaintiff argues that Defendant failed to raise the issue of Mr. Liggins's liability for the cost and damages of the July 29, 2009 accident in the course of arbitration and has therefore waived the issue of offset. (*Id.* at 18-27). Plaintiff also asserts that if this Court does remand the award for clarification that remand must be to the original arbitrator, Arbitrator Harkless. (*Id.* ECF 30-33).

> As the Fourth Circuit has repeatedly held:
>
> Judicial review of an arbitration award in federal court is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). In fact, the scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 (4th Cir. 1998). Indeed, as we have emphasized, in reviewing such an award, "a district or appellate court is limited to determine whether the arbitrators did the job they were told to do-not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remney v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted).

*Raymond James Fin. Services, Inc. v. Bishop*, 596 F.3d 183, 190 (4th Cir. 2010) (quoting *Three S Delaware, inc. v. DataQuick Info Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)).

In enforcing arbitration awards, courts begin with two basic guidelines: (1) whether the award draws it essence from the agreement; and (2) whether the award exceeds the scope of the submission. *W. Elec. Co., Inc. v. Commc'n Equip. Workers, Inc.*, 409 F.Supp. 161, 166 (D. Md. 1976). Here, Arbitrator Harkless ordered Defendant to "reinstate [Mr. Liggins] to his Truck Driver position, with reimbursement for all wages lost from October 19, 2009 to the date of reinstatement." (ECF No. 1-2 at 25). It is undisputed that the award draws its essence from the CBA, which provides Plaintiff and Defendant with a four-level grievance procedure followed, if necessary, by binding arbitration to settle disputes over any claimed violation of the CBA. (ECF No. 11, Ex. 1 §§ 9(a),(b)).

Similarly, the award is within the scope of the submission. As long as the arbitrator's reading of the issues submitted to him by the parties is "rationally derived" from the submission, he has the authority to resolve the dispute. *United Steelworkers of Am. v. J.D. Eckman, Inc.*, 858 F.Supp. 56, 57 (E.D. Pa., 1994) (quoting *High Concrete Structures, Inc. v. United Elec. Radio and Mach. Workers of America*, 879 F.2d 1215, 1219 (3d Cir. 1989); *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F. 2d 299, 302 (3d Cir. 1982)). Here, neither party contests that the issue to be determined by Arbitrator Harkless was "whether the Grievant's discharge was for just cause, and if not, what should be the remedy." (*Id.* at *2*). The issue of back pay, including questions of mitigation and set-offs, falls squarely within the scope of determining a remedy and is therefore "rationally derived" from the parties' submission.

Further, the Court finds that both the issue of mitigation and the issue of set-offs were briefed and presented to the arbitrator. During the arbitration hearings Defendant introduced

9

evidence regarding payments it made as a result of Mr. Liggins's accident. (*Id.* at 273-74). It also introduced evidence about Mr. Liggins's workers' compensation payments (ECF No. 15, Ex. 3 at 269-71) and questioned Mr. Liggins about his efforts to find a job after his termination. (*Id.* at 548-553).

In its post-hearing brief, Defendant cited Section 13(a) of the CBA and gave an accounting of its "direct costs as a result of grievant's collision." (ECF No. 8, Ex. 9 at 3, 20). Defendant also obtained a subpoena from Arbitrator Harkless requiring Mr. Liggins to produce documents related to his income and efforts to secure employment since November 2009. (ECF No. 8, Ex. 6). In moving to quash the subpoena, Plaintiff argued that the record was sufficient to allow the parties to argue their positions with regard to mitigation and that "[i]ssues of the amount of interim earnings and the efforts made to search for employment are normally dealt with, if they need to be, after the outline of the remedy has been decided." (ECF No. 8, Ex. 7).

Next, while the Arbitrator's award is clear in some respects, it is ambiguous in others. It orders Defendant to "reinstate him [, i.e., Mr. Liggins,] to his Truck Driver position, with reimbursement for all wages lost from October 19, 2009 to the date of reinstatement." (ECF No. 1-2 at 25). It further provides that in computing back pay, Defendant shall pay for any amount of unemployment payments Mr. Liggins is required to reimburse to the State of Maryland. (*Id.* at 26). However, it does not specify whether mitigation or set-offs should be taken into consideration in calculating "all lost wages."

The Fourth Circuit has noted that "[r]emand to an arbitrator for clarification and interpretation is not unusual in judicial enforcement proceedings." *Raymond James Fin. Services, Inc.* 596 F.3d at 191. However, it has warned that "courts must approach remand to the arbitrator with care lest the arbitrator believe that a 'remand' is equivalent to 'retrial' with an expectation

of an opposite result the second time around." *Id.* (quoting *McClatchy Newspapers v. Cen. Valley Typographical Union No. 46*, 486 F.2d 731, 734 n.1 (9th Cir. 1982)). It has also indicated that where an award is silent as to set-off, rather than ambiguous, there is an assumption that none was granted. *Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB*, 261 Fed.Appx. 631, 633 (4th Cir. 2008) (citing *Int'l Union of Operating Eng'rs, Local 841 v. Murphy Co.,* 82 F.3d 185, 190 (7th Cir. 1996)).

The Court finds that, here, a remand is appropriate. The award is not silent as to adjustments to the amount of back pay due; it contains a provision providing for reimbursements to the State of Maryland. Further, though the award calls for "reimbursement for all wages lost," it does not provide a clear guideline for calculating those wages. As sister courts have held, "it is firmly established within the federal labor law that a district court may, in the context of a section 301 proceeding, resubmit an existing arbitration award . . . to the original arbitrators for 'interpretation' or 'amplification.'" *Locals 2222, 2320-2327, Intern. Bhd. Of Elec. Workers v. N. Eng. Tel. and Tel. Co.*, 628 F.2d 644, 647 (1st Cir. 1980) (collecting cases). Where, as here, "an arbitration award requires reinstatement and back pay, and the parties cannot agree on the amount of back pay, the matter should be remanded to the original arbitrator to clarify the award." *Unite Here Local 26 v. Taj Hotel Bos.*, 731 F.Supp. 2d 95, 101 (D. Mass. 2010) (citing *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1549 (11th Cir. 1993); Coca-Cola Bottling Co., Consol., Inc. v. Int'l Bhd. of Teamsters, Local 991*, 506 F.Supp. 2d 1052, 1056-57 (S.D. Ala. 2007)). Even where an arbitrator has issued a final award, his "jurisdictional power revives, just as does that of a lower court when its jurisdiction, temporarily divested upon the filing of an appeal, is revived upon remand." *J.D. Eckman Inc*, 858 F. Supp. at 57. Therefore a remand is appropriate in this case.

Defendant has argued that it is "not seeking clarification of the award" but instead submitting a "new issue to be resolved," namely "the Union's objection to the Publisher's enforcement of setoff due to an arbitral finding of Mr. Liggins' negligence under Article 13(a)." (ECF No. 14-1 at 8-9). In determining whether the back pay dispute constitutes a separately arbitrable matter, this Court finds the First Circuit's opinion in *Locals 2222* instructive. 628 F.2d at 648-649. There, after considering the "limited authority" on the issue, the First Circuit favored remand over re-exhaustion of the grievance and arbitration process, based on the fact that the dispute was "plainly encompassed by the original submittal." *Id.* at 649. The submittal in that case was nearly identical to the one in this case: "Was the discharge of John Leary without just cause within the meaning of Article 9.03(a) of the parties' collective bargaining agreement . . . . If so, what should the remedy be?" *Id.* There, like here, by submitting the issue of remedy to the arbitrator, the parties invited his construction of relevant sections of the CBA, including, in this case, Section 13(a). Therefore, this Court finds that remand to the original arbitrator for clarification, with the narrow and specific purpose of clarifying the award of back pay with regard to mitigation and offset, is the only appropriate remedy.

Both parties also seek attorney's fees. Defendant alleges that "[d]espite full knowledge and understanding that the dispute over the remedy was a new issue to be taken through the grievance and arbitration process, the Union chose instead to circumvent the negotiated process agreed upon between the parties, file the underlying complaint and force the Publisher to incur unnecessary expense." (ECF No. 8-1 at 22). However, "in a wrongful discharge situation where the parties have failed to agree on the back pay provision of the arbitrators' reinstatement order, the Union often seeks to break the impasse by commencing a section 301 section for enforcement of the award." *Locals 2222*, 628 F.2d at 651 (collecting cases). Given the above-

discussed ambiguity in the arbitrator's award, Plaintiff's action was justified and Defendant is not entitled to attorney's fees.

Similarly, the Court finds that Plaintiff is not entitled to attorney's fees. Plaintiff alleges that it is entitled to attorney's fees because the "Baltimore Sun's position regarding the Section 13(a) issue that it concedes it did not raise before Arbitrator Harkless is completely without merit and unfounded." (ECF No. 11-1 at 41-42). However, as the Court has found, Defendant did raise the issue before Arbitrator Harkless. As with Defendant's claims, Plaintiff's were justified given the ambiguity in the arbitrator's decision.

## IV.  CONCLUSION

Accordingly, an order shall issue (1) GRANTING Plaintiff's cross-motion for summary judgment (ECF No. 11) to the extent that the case is remanded to the original arbitrator and DENYING it in all other respects; (2) DENYING Defendant's motion to dismiss or, in the alternative, for summary judgment (ECF No. 8); and (3) REMANDING this case to the original arbitrator to clarify his award with regard to the issue of back pay.

Dated this 4th day of October, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge